IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID HAMILTON,                           No. 2:13-CV-1143-MCE-CMK-P

    Plaintiff,

  vs.                                   FINDINGS AND RECOMMENDATIONS

K. SUTTERFIELD, et al.,

    Defendants.

_____/

    Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss (Doc. 20).

## I. PLAINTIFF'S ALLEGATIONS

    This action proceeds on the first amended complaint. Plaintiff names the following as defendants: Knipp, the prison warden; P. Vanni, the associate warden; K. Sutterfield; J. Davidson; V. Pickering; I Tuua; G. Young; J. Leese; Corrillo; J. Buckard; C. Heintschel; and I. Reyes.[1] Plaintiff alleges that he was interviewed by defendant Leese on

---

[1] Knipp, Vanni, and Leese have been dismissed from the action.

1

October 10, 2012, regarding his request that he "maintain single cell status for safety concerns and to complete his legal work already being initiated." According to plaintiff, he was told that he is double cell approved until his status is changed by the classification committee, but that he should contact staff immediately if he felt his safety was in jeopardy.

Next, plaintiff claims that, on October 16, 2012, he was transferred to a different housing unit and assigned a double cell. His cellmate – inmate Strong – approached plaintiff and told him he needed to find another cell. Plaintiff states that he informed defendant Corrillo, specifically complaining that he was being "pressured into giving up the bottom bunk or moving out the cell." According to plaintiff, inmate Strong "increased his pressure on plaintiff Hamilton with threats of violence and turning the lights off while Hamilton was preparing his habeas corpus and other legal matters." Plaintiff states that he complained again to defendant Corrillo as well as defendants Sutterfield, Davidson, Young, and Tuua, "who were present at both committees before Hamilton got involved with a physical altercation" but that "all staff members turned a blind eye. . . ." Plaintiff adds: "Hamilton relied on the issues being resolved and taken care of appropriately as Sergeant Leese said they would, but were not taken care of; in fact nothing was done at all." Plaintiff states that he was taken to administrative segregation on November 21, 2012 "for battery on I/M Strong who threatened me." According to plaintiff, defendant Corrillo "was not there that night but he had knowledge of Strong's threats and did nothing to prevent an altercation." Plaintiff adds that, while in administrative segregation, he requested his legal materials "and was denied."

Next, plaintiff claims that, on November 23, 2012, "the investigative employee C/O J. Buckard lied to me and told me I would not be allowed to use material witnesses at the disciplinary hearing who were not there the night of the occurrence." Plaintiff alleges that, on November 28, 2012, and again on December 7, 2012, he "sought evidence" from defendants Sutterfield, Young, Tuua, Davidson, and Pickering "who were at the committee when I informed them of the threats of violence." Plaintiff also claims that he requested a representative for the

disciplinary hearing "but never got one." Plaintiff alleges that, on December 21, 2012, defendant Buckard "informed me that C/O Corrillo, Sutterfield, and members of the committee could be interviewed but never were." Plaintiff claims that, at his disciplinary hearing, defendant Heitschel "denied me the opportunity to call witnesses and present evidence."

Next, plaintiff states: "On several occasions I provided Warden Knipp with the notice of misconduct but there was no response. . . ." He also states that legal mail was confiscated and that he needed it returned "so that I could litigate pending cases. . . ."

According to plaintiff, on December 4, 2012, he wrote defendant Reyes a note regarding his legal materials. Plaintiff states that defendant Reyes told him his case had been dismissed and said: "When you show proof of an active case you will get the property." Plaintiff claims that he sought "supervisor review" on December 5, 2012, and defendant Heintschel told him to make a request to the property officer. Plaintiff states that, by the time he finally received his legal materials back and exhausted his state court remedies, the deadline for filing a federal habeas petition (which plaintiff says was April 17, 2013) had passed.

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). However, legally conclusory statements, not supported by actual factual allegations, need not be accepted. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555-56. The complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557).

In deciding a Rule 12(b)(6) motion, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994).

/ / /

/ / /

4

Finally, leave to amend must be granted "[u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

Defendants argue: (1) plaintiff has failed to state an Eighth Amendment safety claim based on failure to protect; (2) plaintiff has failed to state a due process claim; and (3) plaintiff has failed to state a First Amendment claim based on denial of access to the courts.

#### A. **Eighth Amendment Claim**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

///

///

///

1 | Under these principles, prison officials have a duty to take reasonable steps to
2 | protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir.
3 | 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1)
4 | objectively, the prisoner was incarcerated under conditions presenting a substantial risk of
5 | serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer,
6 | 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge
7 | element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not
8 | liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer,
9 | 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison
10 | officials know for a certainty that the inmate's safety is in danger, but it requires proof of more
11 | than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).
12 | Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison
13 | officials actually knew of a substantial risk, they are not liable if they took reasonable steps to
14 | respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

15 | Citing Clem v. Lomeli, 566 F.3d 1177, 1181-82 (9th Cir. 2009), defendants argue
16 | that plaintiff lacks standing to pursue an Eighth Amendment claim because "he suffered no injury
17 | as a result of the Defendants' alleged actions or inactions." Rather, defendants contend that
18 | plaintiff was the aggressor in the incident with his cellmate and that any injuries he sustained are
19 | the result of his own actions and not those of defendants. According to defendants: "Plaintiff
20 | cannot allege that he was injured by inmate Strong because he was never assaulted by inmate
21 | Strong."

22 | The court does not agree. Initially, the court observes that defendants misread
23 | Clem. In that case, the Ninth Circuit rejected the trial court's jury instruction which required the
24 | plaintiff to prove that the defendants' conduct caused him harm. The holding does not stand for
25 | the proposition defendants put forward here that plaintiff cannot state a claim because he does
26 | not allege that he was harmed by defendants' alleged failure to protect. Defendants' "no harm,

no foul" argument does not apply in the context of this case. As defendants concede, there is no case law in this circuit which holds that instigation is a fatal flaw to a failure-to-protect claim.[2]

B. **Due Process Claim**

The Due Process Clause protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). With respect to prison disciplinary proceedings, due process requires prison officials to provide the inmate with: (1) a written statement at least 24 hours before the disciplinary hearing that includes the charges, a description of the evidence against the inmate, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. See Wolff, 418 U.S. at 563-70. Due process is satisfied where these minimum requirements have been met, see Walker v. Sumner, 14 F.3d 1415, 1420 (9th Cir. 1994), and where there is "some evidence" in the record as a whole which supports the decision of the hearing officer, see Superintendent v. Hill, 472 U.S. 445, 455 (1985). The "some evidence" standard is not particularly stringent and is satisfied where "there is any evidence in the record that could support the conclusion reached." Id. at 455-56. However, a due process claim challenging the loss of good-time credits as a result of an adverse prison disciplinary finding is not cognizable under § 1983 and must be raised by way of habeas corpus. See Blueford v. Prunty, 108 F.3d 251, 255 (9th Cir. 1997).

Regarding his disciplinary hearing, plaintiff claims that: (1) he was not permitted to call witnesses; and (2) he was denied a representative at the hearing. First, the law does not require that plaintiff be provided a representative at the hearing. Wolff requires a staff assistant be assigned where the charges are complex or the inmate is illiterate, neither of which is the case

---

[2] While such an argument might be persuasive in the context of assessing what award of damages, if any, plaintiff should receive if liability is established, it is not relevant to the inquiry here – whether plaintiff has stated a cognizable claim.

here. As to witnesses permitted to be called at the hearing, plaintiff claims that defendants improperly denied his request for one staff witness – Corrillo – and two inmates witnesses – Cramer and Collins – to testify at the hearing. According to plaintiff, while officer Carrillo was not present at the time of the incident with inmate Strong, ". . .he had knowledge of Strong's threats. . . ." against plaintiff. Similarly, the portion of the rules violation report attached to the complaint reflects that plaintiff wanted to call inmates Cramer and Collins to testify as to Strong's threats against plaintiff. These witnesses were denied because their knowledge of threats made by inmate Strong against plaintiff were not relevant to the charge of battery on an inmate under California Code of Regulations § 3005(d)(1), which has no provision relating to the cause of the charged offense, and which plaintiff admitted violating.[3] As defendants note, the hearing officer in this case had the discretion to deny witnesses who do not have relevant testimony. See Wolff, 418 U.S. at 566.

The court agrees with defendants that plaintiff has not pleaded facts sufficient to sustain a due process claim.

### C. **First Amendment Claim**

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process. See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to

---

[3] Plaintiff admits that he hit inmate Strong in the face.

non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

Plaintiff claims that he was denied access to his legal materials and that, as a result, he was prevented from filing a timely federal habeas petition. A review of plaintiff's court filings reflects that, while plaintiff's federal habeas petition was dismissed as untimely, the court concluded that the untimeliness resulted from a seven-month delay between March and November 2014. See Hamilton v. Knipp, Cent. Dist. Cal. Case No. CV-14-8537-DSF (RZ).[4] Additionally, the court rejected plaintiff's argument that he was entitled to equitable tolling because he was denied access to his legal materials. See id. Because plaintiff's own delay after the events alleged in the complaint caused the prejudice to plaintiff's federal habeas petition, plaintiff cannot allege an actual injury arising from the conduct of any defendant to this action. For this reason, plaintiff fails to state a First Amendment claim based on denial of access to the courts.

---

[4] The court may take judicial notice pursuant to Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530 F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, see Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants' motion to dismiss (Doc. 20) be granted in part and denied in part;

2. Plaintiff's due process claim be dismissed with prejudice;

3. Plaintiff's First Amendment claim be dismissed with prejudice;

4. Defendants J. Buckard, C. Heintschel, and I. Reyes be dismissed with prejudice; and

5. This action proceed on plaintiff's Eighth Amendment claim as against the remaining defendants.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 8, 2017

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE