# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID HAMILTON,<br><br>    Plaintiff,<br><br>    v.<br><br>K. SUTTERFIELD, et al.,<br><br>    Defendants. | No. 2:13-CV-1143-MCE-DMC-P<br><br>FINDINGS AND RECOMMENDATIONS |

        Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging Defendants failed to keep him safe in violations of his Eighth Amendment right against cruel and unusual punishment. Pending before the Court is Defendants' motion for summary judgment (ECF No. 56) arguing that the undisputed material facts demonstrate the Defendants were not deliberately indifferent and that they are entitled to qualified immunity. For the reasons discussed below, this Court finds Defendants are entitled to judgment in their favor as a matter of law.

///
///
///
///
///

1

## I. PLAINTIFF'S ALLEGATIONS

This action proceeds on Plaintiff's verified first amended complaint against Defendants Davidson, Young, Sutterfield, Pitckering, Carrillo, and Tuua (ECF No. 10).[1] Plaintiff alleges that being double celled with inmate Strong presented a substantial risk of serious harm to Plaintiff and that the Defendants were all aware of this risk and disregarded it.

Specifically, Plaintiff alleges that he informed Defendant Carrillo, that Strong would not allow him into his cell, that Strong pressured him into giving up the bottom bunk, that Strong threatened him with violence and was harassing him by turning the lights off, and possibly that Strong shoved him.[2] ECF No. 10 at 4. Plaintiff alleges that Defendant Carrillo failed to act in response to this information.

Plaintiff alleges that Defendants Davidson, Young, Sutterfield, Pickering, and Tuua were made aware of the substantial risk of serious harm to Plaintiff through their Interdisciplinary Treatment Team (I.D.T.T.) meetings. Plaintiff alleges Defendants Davidson, Young, Sutterfield, Pickering, and Tuua were aware that Strong initially did not allow Plaintiff into his cell, that Strong had threatened Plaintiff with violence, that Strong was harassing Plaintiff by turning off the lights and interrupting his legal work, and possibly that Strong had shoved him. See ECF No. 10 at 4, ECF No. 56-3 at 3, ECF No. 65 at 4. Plaintiff contends that because Defendants disregarded this substantial risk of harm, Plaintiff and Strong engaged in an altercation where Plaintiff struck Strong in the face and was subsequently sent to administrative segregation. ECF No. 56-3 at 4, ECF No. 65 at 5.

---

[1] The first amended complaint names the following as defendants: (1) William Knipp; (2) P. Vanni; (3) K. Sutterfield; (4) J. Davidson; (5) V. Pickering; (6) I. Tuua; (7) G. Young; (8) J. Leese; (9) Corrillo; (10) J. Buckard; (11) C. Heintschel; (12) I. Reyes; (13) Alwazani; (14) L. Wilcox; (15) Mule Creek State Prison; (16) Doe Defendants. See ECF No. 10, pgs. 1-3. Defendants Mule Creek State Prison and Wilcox, who were named in the original complaint, were not named in the first amended complaint. Defendants Knipp, Vanni, and Leese were dismissed on September 30, 2016. See ECF No. 12 (September 30, 2016, Magistrate Judge order). Defendants Buckard, Heintschel, and Reyes were dismissed on September 29, 2017. See ECF No. 46 (District Judge order).
  As to defendants Knipp, Vanni, and Leese, the Magistrate Judge concluded they should be dismissed for failure to state a claim. See ECF No. 12. The undersigned recommends the District Judge adopt this finding.

[2] Plaintiff does not recall if he ever informed any of the Defendants that Strong had shoved him. See ECF No. 56-3 at 4, ECF No. 65 at 4.

2

## II. THE PARTIES' EVIDENCE

A. **Evidence Offered by Defendants**

Defendants argue the following facts are not in dispute:

1. At all times relevant to this case, Plaintiff was an inmate housed at Mule Creek State Prison (MCSP) in Ione, California. (ECF No. 10.)

2. On October 8, 2012, Plaintiff requested that he be kept on single-cell status for unspecified safety concerns and to complete his legal work. (ECF No. 10 at 4.)

3. On October 10, 2012, Plaintiff was interviewed by Sergeant Leese, who informed him that he was double-cell approved until the Unit Classification Committee changed it. (ECF No. 10 at 4.)

4. On October 10, 2012, Plaintiff told Sergeant Leese that he did not have any safety concerns, but that he would if he received any cellmate. (Declaration of Lucas L. Hennes, Ex. C.)

5. On October 16, 2012, Plaintiff attended a joint Unit Classification Committee/Interdisciplinary Treatment Team hearing for an annual review of his housing status. (Declaration of Lucas L. Hennes, Ex. D.)

6. At his October 16, 2012 Unit Classification Committee hearing, Plaintiff requested single-cell status to work on his court case. (Declaration of Lucas L. Hennes, Ex. A at 45:6-9.)

7. Plaintiff's October 16, 2012 request for single-cell status was denied. (Declaration of Lucas L. Hennes, Ex. A at 45:14-15.)

8. There was no discussion of Plaintiff's safety concerns with inmate Strong at the October 16, 2012 hearing. (Declaration of Lucas L. Hennes, Ex. A at 45:16-23.)

9. On October 17, 2012, Plaintiff was transferred to cell A-2-217. (Declaration of Lucas L. Hennes, Ex. A at 26:21-23.)

10. Plaintiff first met inmate Strong on October 17, 2012. (Declaration of Lucas L. Hennes, Ex. A at 26:21-23; 37:15-17.)

11. When Plaintiff was first assigned to inmate Strong's cell on October 17, 2012, Strong told Plaintiff not to come up to the cell. (Declaration of Lucas L. Hennes, Ex. A at 26:21 – 27:3.)

12. Plaintiff spoke to Defendant Carrillo about Strong's statement, and Defendant Carrillo told Plaintiff to go to the cell. (Declaration of Lucas L. Hennes, Ex. A at 27:5-9.)

13. When Plaintiff went to his cell, he found that Strong had closed the door and locked him out. (Declaration of Lucas L. Hennes, Ex. A at 27:10 – 28:8.)

14. After Strong closed the door to Plaintiff's cell, Plaintiff told Defendant Carrillo that Strong didn't want him in his cell. (Declaration of Lucas L. Hennes, Ex. A at 48:1-5.)

15. Defendant Carrillo told Plaintiff he would talk to Strong about letting him in the cell. (Declaration of Lucas L. Hennes, Ex. A at 47:10-24.)

16. Plaintiff waited for Officer Carrillo to speak to Strong before he attempted to enter the cell again. (Declaration of Lucas L. Hennes, Ex. A at 27:10-15; 28:9 – 29:4.)

17. After Defendant Carrillo talked to Strong, Strong let Plaintiff into the cell. (Declaration of Lucas L. Hennes, Ex. A at 47:22 – 48:8.)

18. After Plaintiff went into the cell with Strong, Plaintiff had no further conversation with Defendant Carrillo on October 17, 2012. (Declaration of Lucas L. Hennes, Ex. A at 48:9-11.)

19. Plaintiff did not talk about Strong to any of the other Defendants on October 17, 2012. (Declaration of Lucas L. Hennes, Ex. A at 48:12-15.)

20. Once Plaintiff went into the cell with Strong, Strong told Plaintiff that he had to find a place to go and that he had to give up the bottom bunk or he would beat him up. (Declaration of Lucas L. Hennes, Ex. A at 46:14-21.)

21. Between October 17 and November 21, 2012, Strong was verbally aggressive and repeatedly turned the lights off and on while Plaintiff was attempting to prepare legal documents. (ECF No. 10 at 4; Declaration of Lucas L. Hennes, Ex. A at 60:13-21.)

22. On November 8, 2012, Plaintiff attended an Interdisciplinary Treatment Team meeting. (Declaration of Lucas L. Hennes, Ex. A at 54:12-14.)

23. The members of Plaintiff's Interdisciplinary Treatment Team on November 8, 2012, were Defendant Sutterfield, Defendant Pickering, Defendant Young, Defendant Tuua, and Dr. Wilcox. (Declaration of Lucas L. Hennes, Ex. B at 2.)

24. At his Interdisciplinary Treatment Team meeting on November 8, 2012, Plaintiff informed the team members of Strong's threats. (Declaration of Lucas L. Hennes, Ex. A at 54:15 – 55:1.)

25. On or about November 19, 2012, Strong shoved Plaintiff. (Declaration of Lucas L. Hennes, Ex. A at 58:3-15.)

26. Plaintiff did not sustain any physical injuries as a result of being celled with Strong. (Declaration of Lucas L. Hennes, Ex. A at 59:23 – 60:12.)

///

27. Aside from shoving Plaintiff on or about November 19, 2012, Strong never physically attacked Plaintiff. (Declaration of Lucas L. Hennes, Ex. A at 60:13-15.)

28. Plaintiff does not recall if he ever informed anyone that Strong had shoved him on or about November 19, 2012. (Declaration of Lucas L. Hennes, Ex. A at 58:16 – 59:6.)

29. On November 21, 2012, after Strong approached Plaintiff in the day room, Plaintiff punched Strong in the face. (Declaration of Lucas L. Hennes, Ex. A at 57:10 – 58:2; 64:8-15.)

30. Plaintiff was placed into administrative segregation on November 21, 2012. (Declaration of Lucas L. Hennes, Ex. A at 37:21-23.)

31. Inmate Strong did not try to assault Plaintiff at any point after November 21, 2012. (Declaration of Lucas L. Hennes, Ex. A at 37:24 – 38:1.)

32. Between October 17 and November 21, 2012, Plaintiff did not talk to Defendants Young, Sutterfield, Pickering, Davidson, or Tuua about his concerns with inmate Strong outside of his November 8, 2012 Interdisciplinary Treatment Team meeting. (Declaration of Lucas L. Hennes, Ex. A at 53:11 – 54:8.)

ECF No. 56-3.

Defendants' statements of undisputed facts are supported by a declaration of Lucas L. Hennes related to the taking of Plaintiff's deposition, see Docs. 56-4 (Hennes declaration), and the exhibits attached thereto—Exhibit A: Deposition of Plaintiff, Exhibit B: Miscellaneous documents from Plaintiff, Exhibit C: 10/10/12 Informational Form 128-B, Exhibit D: 10/16/12 Classification Annual Review notes, Exhibit E: Rules Violation Report, 11/21/12 incident, Exhibit F: Inmate/Parolee Appeal, CDCR Form 602.

**B.      Plaintiff's Evidence Offered in Opposition**

Plaintiff has filed the following in response to Defendants' motion:

ECF No. 63    "Plaintiff's Opposition and Objections to Defendants' Motion for Summary Judgment; Memorandum of Points and Authorities, and Affidavit"

ECF No. 63-2 "Affidavit in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment"

ECF No. 63-3 "Declaration of Plaintiff David Hamilton in Support of Opposition to Defendants' Motion for Summary Judgment"

///

| | ECF No. 63-4 | "Plaintiff's Reply to Defendants' Statement of Undisputed Facts in Support of Opposition to Summary Judgment" |
|---|---|---|
| | ECF No. 65 | "Plaintiff's Reply to Defendants' Statement of Undisputed Facts in Support of Opposition to Summary Judgment" |
| | ECF No. 66 | "Plaintiff's Statement of Disputed Facts in Support of Opposition to Defendants' Motion for Summary Judgment" |

Despite the lack of any provision in the Federal Rules of Civil Procedure for more than one opposition to the pending motion for summary judgment, the court has considered each of Plaintiff's filings and any exhibits attached thereto. The court has also considered Plaintiff's verified first amended complaint and other relevant filings.

Plaintiff's opposition, in large part, does not challenge the undisputed facts outlined in Defendants' summary judgment motion. Rather, Plaintiff reasserts arguments raised in his previous filing, including that he was in altercations with other cellmates, which created an increased fear in Plaintiff, that the Defendants were aware of inmate Strong's increasingly aggressive behavior, and that inmate Strong pushed him and broke his hotpot. ECF No. 63-1 at 1-6. Plaintiff's opposition suffers from a lack of evidentiary citations as well and conclusory statements related to Defendants knowledge and intent.

In Plaintiff's Statement of Disputed Facts, Plaintiff alleges the following facts are in dispute:

> 1. At all times relevant to this case, Plaintiff David Hamilton was an incarcerated inmate held at Mule Creek State Prison, Ione, CA., accept for this unrelated incident at Corcoran in cell fight on 3-8-11. Other in cell fights after the instant matter were at Mule Creek State prison and Plaintiff made diligent efforts to contact staff so that the issues could be taken care of appropriately. But after he was transferred from building 5 the staff and I.D.T.T. disregarded him.
>
> 2. The additional RVR's are used as evidence to establish a pattern of in cell fights. (Declaration of David Hamilton, Ex. A Affidavit attached)
>
> 3. On October 8th, 2012 Plaintiff requested to be placed on single cell status for specified reasons; safety concerns because he was incompatible and wanted to prepare his habeas corpus petition challenging his unlawful legal commitment. (Declaration of David Hamilton, Ex A Affidavit attachment.)

///

6

4. Defendants are not entitled to qualified immunity because Plaintiff personally informed the I.D.T.T. members about the existence of a potential risk of danger and they deliberately disregarded his safety and state of mind, and withholding his legal work resulted in injury.

5. Defendants in an individual capacity are/were expected to know or should have known that certain conduct would violate a statutory or constitutional right.

6. On October 10, 2012 I spoke with C.C.I K. Taylor and Sergeant J. Leese concerning a C.D.C.R. 22 regarding issues I had with cellies wanting to fight him; Leese informed Hamilton that in the future if he fears his safety is in jeopardy he is to contact staff immediately.

7. Defendants inactions to abate any potentially increasing risk of danger were the result of deliberate indifference to Hamilton.

8. A push or shove is a battery, a willful and unlawful use of force. It has a general intent act which has a direct natural and probable consequences completed of causing injury.

9. On or approximately the 19th of October 2012 inmate Strong pushed or shoved Hamilton which caused injuries.

10. Hamilton has a history of being victimized by gang members and predators and was informed by the Dr. he shouldn't take any more hits to his head. (See Ex D attached to affidavit).

ECF No. 66.

The disputed facts outlined above, however, cannot properly be labeled as disputed material facts. As Defendants discuss in their reply, disputed facts 1, 2, 6, and 10, are all immaterial to the resolution of the summary judgment motion and thus, necessarily, not disputed material facts. See Anderson v. Liberty Lobby, 477U.S. 242, 248 (1989). Disputed facts 4, 5, 7, and 8, are not statements of fact at all, but rather legal arguments and thus, cannot be considered disputed material facts. See Id. Disputed fact 3 is undisputed. See ECF No. 67-1 at 11. Disputed fact 9 is only disputed due to what is likely a typographical error, as the record indicates Strong shoved Plaintiff on November 19, 2012, not *October* 19, 2012.

///
///
///
///
///

7

## III.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The standard for summary judgment and summary adjudication is the same.  See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).  One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses.  See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record

taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted). It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251.

### IV. DISCUSSION

#### A. Legal Standard

Plaintiff claims Defendants violated his Eighth Amendment right to safety. The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th

Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982) (overruled on other grounds); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

**B.** **Analysis**

1. Physical Injury Requirement

Defendants argue "[a]bsent some injury—which Plaintiff has admitted did not occur—Plaintiff cannot state any § 1983 claim." ECF No. 56-2 at 7. By "injury" Defendants imply that physical injury is required to proceed with a section 1983 claim alleging a failure to keep safe. Defendants cite no authority supporting this contention. To the extent that Defendants argue 42 U.S.C. § 1997(e) creates a physical injury requirement, their argument is unpersuasive. The physical injury requirement only applies to claims for mental and emotional injuries and does

not bar an action for a violation of a constitutional right. See Oliver v. Keller, 289 F.3d 623, 630 (9th Cir.2002).

> Although hardly a model of clarity, Oliver determined that § 1997e(e) does not apply to claims for compensatory damages not premised on emotional injury, suggesting that the violation of a constitutional right has a compensatory value regardless of what the physical/emotional injuries are. Oliver, 289 F.3d at 630. In other words, damages would be available for a violation of Cockcroft's Eighth Amendment rights without regard to his ability to show a physical injury. Oliver made this point in holding that " § 1997e(e) applies only to claims for mental and emotional injury. To the extent that appellant's claims for compensatory, nominal or punitive damages are premised on alleged Fourteenth Amendment violations, and not on emotional or mental distress suffered as a result of those violations, § 1997e(e) is inapplicable and those claims are not barred." Oliver, 289 F.3d at 630. The fact that Cockcroft never suffered any physical injury as a result of Linfor's alleged acts may make his Eighth Amendment claim of very little financial value but does not make the claim non-existent.

Cockcroft v. Kirkland, 548 F. Supp. 2d 767, 776–77 (N.D. Cal. 2008).

This means that Plaintiff's damages may be limited because he suffered no physical injury, but the lack of physical injury is by no means a prerequisite to his section 1983 cause of action as Defendants assert.

2. Deliberate Indifference

There are no material facts in dispute here. The only question is whether, based on the facts alleged and the evidence provided, Defendants are entitled to judgment in their favor as a matter of law. Defendants argue that they are entitled to such judgment because Plaintiff has failed to establish the necessary elements of a failure to protect claim under the Eighth Amendment. Specifically, Defendants argue that Plaintiff did not face an objectively serious risk of harm, and that Plaintiff cannot establish Defendants knew of any serious risk of harm and disregarded it.

Plaintiff argues that sufficient facts do exist to establish that he faced an objectively serious risk of harm—specifically the threats from his cellmate, inmate Strong, and the altercation where Strong shoved Plaintiff, created a situation where Plaintiff was at serious risk of harm. Plaintiff also argues that sufficient facts exist to establish that the Defendants knew about this serious risk of harm from inmate Strong and ignored it. Specifically, Plaintiff asserts

that he informed Defendants about the threats made by Strong and despite knowing about these threats Defendants disregarded them.

### i. Substantial Risk of Serious Harm

As noted above, in order to sustain an Eighth Amendment claim for failure to protect, Plaintiff has to establish, objectively, that he faced a substantial risk of serious harm. Defendant's argument is entirely premised on the erroneous argument that Plaintiff was required to establish that he suffered physical injury as a result of being celled with inmate Strong. Defendants do not challenge that the facts in this case—the ongoing and escalating threats from inmate Strong, the turning on and off of the lights, the demand that Plaintiff give up the bottom bunk, and the physical altercation between Plaintiff and Strong—establish a substantial risk of serious harm. Defendants only argue because no physical injury resulted there can be no substantial risk of serious harm. For the reasons discussed above, this is an incorrect statement of law and thus a misguided argument. As such, this court cannot find that there was no substantial risk of serious harm to Plaintiff, and the objective component of the Farmer requisites is satisfied here. 511 U.S. at 837.

### ii. Defendants' Knowledge and Disregard of Substantial Risk

Plaintiff must also establish that subjectively, the Defendants knew of and disregarded the substantial risk of serious harm 511 U.S. 844. Here, Defendants argue that even if Plaintiff faced an objectively serious risk of harm from Strong, he cannot establish that the Defendants knew of this risk and disregarded it. This Court agrees.

Defendants argue, and the evidence supports, that Defendants were only aware of the initial threats made by Strong to Plaintiff. See ECF No. 56-4 at 15-18, ECF No. 67-1 at 7, ECF No. 65 at 4. Plaintiff attempts to argue that Defendants were also aware of the physical altercation involving Strong shoving Plaintiff, but this is contradicted by Plaintiff's deposition testimony. During his deposition Plaintiff was asked if he reported the shove, Plaintiff responded yes, and then equivocated when asked who he reported it to. Plaintiff stated, "I don't quite recall if I said he shoved me. But I continued to tell Officer Carrillo that I was having problems." ECF No. 56-4 at 20. Plaintiff then attempts to argue Defendants were aware of this incident because

he attempted to report it.  Specifically, Plaintiff asserts, for the first time, in his response to Defendants' undisputed facts, that he attempted to CDCR-22 the I.D.T.T. but the process was very slow and non-responsive.  ECF No. 65 at 4-5.  This statement is not supported by any of the evidence presented and is referenced by no other material reviewed by this Court.  But even if this statement could be supported by facts and evidence in the record, it would still fail to establish Defendants had actual knowledge that a risk of serious harm exists, because Plaintiff doesn't allege Defendants even knew about CDCR-22 form.  See Gibson v. Cty. Of Washoe, Nev., 290 F.3d 1175, 1187-88 (9th Cir. 2002).  Thus, there is no evidence to support the contention that the Defendants were aware of the incident involving Strong shoving Plaintiff.

The question then becomes, whether the Defendants' knowledge regarding the threats by Strong against Plaintiff are sufficient to establish the subjective prong of the Eighth Amendment analysis.  This Court finds that these threats alone are not sufficient.  The evidence here demonstrates that the Defendants lacked sufficient factual knowledge of the events leading up to Plaintiff punching Strong in the face to draw an inference that there was a serious threat to Plaintiff's safety.  See Farmer v. Brennan, 511 U.S. 825, 837 (1994) (holding the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate…safety; the official must [] be aware of facts from which the inference could be drawn that a substantial risk of serious harm existed").  Because defendants can avoid liability by presenting evidence that they lacked knowledge of the risk, and Defendants here have presented such evidence, summary judgment in favor of the Defendants is appropriate.  See Farmer, 511 U.S. at 844; Gibson, 290 F.3d at 1187-88.

    3. Qualified Immunity

Defendants argue that, even if they committed constitutional violations, they are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of

qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition. . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first factors in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the reasonableness of the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). The district court has discretion to determine which of the Saucier factors to analyze first. See Pearson v. Callahan,

555 U.S. 223, 236 (2009). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. See Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

While plaintiff's allegations suggest the violation of a constitutional right, defendants are entitled to qualified immunity because, for the reasons discussed above, the undisputed evidence establishes no violation in fact occurred. Therefore, defendants' conduct was based on a reasonable and correct belief they were not violating the law.

## V. CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendants Knipp, Vanni, and Leese be dismissed for failure to state a claim; and

2. Defendants' motion for summary judgment (ECF No. 56) be granted; and

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: January 31, 2019

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

15